Good morning, your honors. I'm Wesley Cheng for the appellate petitioner, True Investment. I would just like to start out that throughout the whole procedure, the petitioner has been forthright and candid with the agency. It supplied voluminous evidence of whatever it is that they asked for. Now, I'm at loss because I feel like the government council and I are on parallel planets. Whenever I try to discuss these issues, they bring up new matters that were never discussed by the CSC nor the district court judge. Your client exhaust administrative remedies on I-140 application? I believe so, your honor. We didn't appeal to the administrative appellate. That's correct. At the time, it's a little bit complicated. They had to apply for I-140 and I-129 at the same time. Aren't they basically the same except one, you get to stay longer than the other, but the analysis, isn't it basically the same as to each of them? The analysis as to managerial duties and whether or not they qualify, those requirements are almost exactly the same. But there are additional requirements for the EB-1 visa, and those look at the qualifying corporations, whether or not they qualify, and whether or not there's a host of other factors in the code section 2045-J. Now, we pointed out three errors. The temporary visa doesn't look at ownership. Is that right? The L-1 visa does not look at ownership. It's a two-separate analysis, and I think perhaps that's why the government was a little confused, too, when it kept incorporating all these decisions from a different CSC. It was a different one. The 129 was dismissed from the judicial review. Is that right? That's correct. Both counsel had stipulated in the district court that we would not argue that matter. The decision on 140, could it be applied to or on 129, could it be applied to 140? No, Your Honor. Could it even be considered with respect to 140? Well, but it's the same parties. Some of the same issues were determined in that. Why wouldn't they be binding in 140? Well, that's an interesting question. If you have. Thank you. If you have two judges that look at the same matter and both judges have different reasonings for coming up with the conclusions. Well, but one of them is final at this point. I mean, you know, one is the one that you dismissed the mandamus on and didn't appeal further. You know, that's a final adjudication on those issues between those parties. As to his qualifications for the L-1. But we fought those issues here also. I guess I'm not sure. Both for the L-1 visa and the EB-1 visa, the managerial qualifications, they're in both. We kept our argument for one and we let it go for the other. I'm not sure how that works out. Normally when an issue has been litigated and it's final, you can't re-litigate that issue. Well, in this case. For the L-1, well, we argued it just for the EB-1 portion. I think the other CSC made a decision, but their decision, if you look at it, says dismiss this case because True Investment had a franchise agreement with Burger King Corporation. So even if you looked at the decision of the 129, even those reasons were, I think, were wrong. And they still don't address the proposed petitioner's duties in the United States. The thing that's confusing here, obviously, too, is we have, what, a director's decision and then we have an AAO decision. And your brief focuses on the reasons articulated by the district court, which limited its reasons to the director, correct? Yes, because that was the I-140 application. But the AAO just came to the same bottom line but on a different basis than the director, right? Exactly. And their basis was that there was a franchise agreement between Burger King Corporation and True Investment. Can you cite any precedent suggesting that an Article III court should limit its review to the first decision of an agency rather than the final decision of an agency? No, but these were two separate matters. But the director is at a lower level than the AAO, right? That is correct. And generally, when things come to an Article III court from that, we go to the last reason decision. We go to the highest. We don't go to the, you know, you just sat and listened to immigration courts and they go in front of an IJ, then they go in front of the BIA. And while if the BIA incorporates the IJ's findings, you know, we'll look at it through that prism. But we don't look at, you know, we don't look at a lower court ruling over a higher court ruling. So this seems to be a little upside down. But by the same token, but then, you know, how can we review? Then they want deference. I don't know. How do you give deference to? I see. In this case, we can look at the district court as having stepped into the shoes of the appeals unit, the AAO. The district court didn't dismiss it based on subject matter jurisdiction. He accepted the case and he stepped into the shoes. So there was an appeal, a review. Well, everyone seems to accept that you guys have a right to be here, but I don't know. I'm not so sure. Well, there was very --. There's not a lot of case law in this case. That's right. There aren't too many cases. There's, I think, two from this Court and one from the Fifth Circuit. But the one from this Court and the intern in the Ninth Circuit, that establishes jurisdiction. That was a 2004 case in this Court. It establishes jurisdiction in these cases. But I understand your concern. It is a little bit confusing because there was two separate applications. If this were the same matter, the agency wouldn't require us to pay two separate fees, to file two separate applications before two separate judges to look at the matter. It doesn't seem fair that you would import one judge's or one reviewing officer's determination on a completely different matter. It just seems to undermine anything about, you know, the review, the review process. Do you want to reserve time for rebuttal? Yes. Yes, please.  Thank you. Thank you, Your Honor. Good morning. Good morning, Your Honor. May it please the Court, my name is Robert Lester, and I'm an assistant U.S.  This is very convoluted. Yes, it is. It would appear to me that it's your position that the Court can affirm the district court's decision on any basis supported in the record. But in administrative appeals, aren't we usually limited to reviewing the reasons articulated by the agency? Yes, that's true. And I do want to explain the confusion that I think is in this case. This case started with an I-140, which was denied. Then they filed an I-129, which is for a temporary review. And that's final? Yes. No, the I-129 is the final. Which one? The final one. Okay. I'll explain it. First they filed for a green card, an I-140. That was denied by the service center locally. They didn't go to the administrative appeals office. They instead decided, well, they'll try for a temporary visa. And then they filed an I-129. That was denied locally as well. Then while the case, while the I-129 appeal, they did take an I-129 appeal to the administrative appeals office. While that was pending, they filed this lawsuit. And they said they wanted review of the I-140 denial, and they wanted a mandamus to compel the agency to have the AAO decide the appeal on the I-129. Shortly thereafter, the agency, the AAO indeed, did decide the I-129 appeal against the petitioners, against the plaintiffs. We stipulated that the mandamus would drop out. I prepared the stipulation. When I prepared the stipulation, I assumed, and I know where this is going to go, but I assumed that, therefore, this case was going to proceed on two grounds, both an appeal of the denial of the I-140 and an appeal of the denial of the I-129, which had just been decided by the AAO. And that's the way I wrote the stipulation. And they signed it. And so, and the court approved it. So until I read their reply brief in this court, I assumed that they were appealing both the denial of the I-129 and the denial of the I-140. That's why I wrote the briefs that way, saying that they were both defensible. And that's why the I-129 was dismissed out of the review in the district court. Isn't that right? Yes. The district court. I don't see how it could be here. Well, I thought the district court made a mistake. That was stipulated to, wasn't it, a dismissal? Well, what I'm referring to is when the district judge said that the only thing before him was the I-140, I thought he made a mistake. And I didn't want to take a chance in the court of appeals by, and so that's why I wanted to defend the decision. The way we read the record was that I-129 was dismissed in the action before the district court. So it's not here. Am I wrong on that? You're right on that. But I didn't realize that until after I saw their reply brief to this court. So I'm perfectly willing to say that their I-129 is not before this court anymore and is just the I-140. I'm only trying to explain to the court one thing, which is why we did the briefing. If I-129 was correctly decided by the appeal, the AAO, could that be used to decide 140 before this court? Could this court make that decision that res judicata or collateral estoppel flowing out of I-129 within the agency could be applied here? I don't have any cases either way, to be honest with you. I do think that it's unseemly that the plaintiffs have run away from the I-129 denial. That was the later denial. That was the denial by the AAO, the higher administrative body, and it was denied on the same grounds. I shouldn't say the same grounds, but the same. It was denied on different grounds than what the director said. That's true, but the same issues, which is did they establish a managerial or executive capacity, and did they establish operational control by the foreign company, those apply in both circumstances. All right. And the same parties were there. And the same parties were there. So if that is some sort of iteration of res judicata, then that's fairly damning to the Petitioner here. Yes, I agree. I just don't have a case to prove that point. I have not. Does that have to go back to the agency to make that decision, or could this court make that decision, apply an iteration of res judicata or collateral estoppel? I think this court could well do that, but also I just want to add, before I start running out of time, that we have ample grounds to uphold the denial of the I-140 utterly independent of the res judicata discussion. Now, I am confused by the ‑‑ if Article III courts are limited to reviewing the final determination of an agency, then didn't the district court in this case err by reviewing the decision of the director of the California Service Center rather than the decision issued by the AAO? And if the district court erred by failing to consider the agency's final determination, do we need to remand? The district court ‑‑ I mean, we usually review the highest body, not the middle one. I think it flows from the court's suggestion of res judicata that if the court believes the res judicata applies, the district court should have considered the AAO's decision. What I'm suggesting is if the court doesn't go in that direction, then we still can focus on the review that the judge did do, the district judge did do of the denial of the I-140, and that is eminently defensible, and that's what I spent the bulk of my brief on, which is it's defensible. But didn't the AAO say that was the wrong way to decide it? The way that the director did? Yes, that's true. On one of two issues. Remember, there's two issues that go to the CIS, and there's two issues that go to the district judge. They have to show organizational ‑‑ they have to show the managerial or ‑‑ primarily managerial or executive capacity. Your Honor's right that the AAO corrected the California Service Center, but only on one issue, which is the qualifying relationship. This court should affirm because the managerial and executive or executive capacity standard didn't change. That's between the California Service Center and the AAO. And if we're right on that, the judgment should be affirmed utterly irrespective of everything else. The district judge looked at the record and said that it wasn't out of line for the agency to look at a fellow running a restaurant, that that doesn't fit into the definition of managerial or executive capacity standard. If you look at the statute, they're talking about people who run complex organizations, not always huge ones, but complex, serious organizations. These are the same people who are placed in the statute right next to outstanding researchers and professors and aliens with extraordinary ability like world-class athletes. We're not talking about people who ‑‑ and this is not to denigrate the individual plaintiff here, but we're not talking about people who sort of routinely run a small shop. So the CSC in both applications said that this doesn't fit the managerial or executive capacity definition. The district judge agreed that the agency was not out of line on that. In Family Inc., the standard is will the record compel a contrary conclusion? And the evidence in this case does not compel a contrary conclusion that Mr. Yu, the beneficiary, would have been a manager or executive of a complex organization that the statute and the rights and the cases contemplate. Also, there's an interesting thing that pervades the entire plaintiff's papers. They say that Mr. Yu would come here to learn the fast food business. And that's another one. I'm going to come to that in a second, if I can. I think both of those factors militate against the concept that he is going to be an executive or executive of a business, or a manager over a restaurant, on the one hand, while he's learning the restaurant business on the other. That seems incongruous. And also, this whole thing about attending trade shows, that's not managerial or executive. That's an operational thing, trying to scare up business. That's what operational people do, not managers or executives. Their brief said that he would be spending a substantial amount of time in this country going to these trade shows. That's not managerial or executive. And that he would be, quote, spending the, quote, remaining time learning the fast food business. On all those factors, the defendants request the court to affirm the decision of the district court, and I thank you, Your Honor. Thank you. All right. I just don't see how, in a certain way, that your client can ever win here. But there's this procedural morass in terms of that if, that there seems to be some strategy to get them to do it again. But he does have that uphill battle in terms of that he lists things that he's attending trade shows and non-managerial responsibilities, which he's stuck with. That's what he's listed with. And I don't see how that, if the procedures are followed correctly, how you can prevail. Right. That doesn't sound very encouraging. But I'd like to go back to the collateral estoppel and the res judicata issue. The reason I don't think it should apply in administrative agency cases is because the agency itself allows for a new review of the same facts. Typically, a petitioner will be granted. And that's when you're in the appellate process. But that process is done. Final, a final adjudication between those parties. Well, again, in this instance, the district court stepped into the shoes of an appeal and they made a decision. Not on that one, though. Not on the one that you abandoned, right? You abandoned one of them. Right. The I-129. Right. And so the I-129 is final. It was abandoned. And so why shouldn't you be bound by what was found in that? It was a different, it was a different application. Did they consider the non-managerial responsibilities in that component? In the I-140? Yes. And the I-129? Was that part of the I-129? No, I don't remember. But it might help if I explain. You have the same parties, the same issues, the same facts. It sort of seems like you would relate the I-129 to the I-140 by way of some sort of race judicata application. And it sort of seems foolish to send it back when the AAO has already decided the I-129 apparently correctly. Is that right? No, I don't think that's the case.  I think that's the case. All right. Your time is up. Thank you for your argument. This matter will stand submitted.
judges: Fisher, Callahan,reed